**In re HOTEL SYRACUSE, INC., Debtor.**

**No. 01–64962.**

United States Bankruptcy Court, N.D. New York.

Feb. 13, 2002.

As Corrected March 18, 2002.

Hodgson Russ LLP, Richard L. Weisz, of Counsel, Albany, NY, for Official Unsecured Creditors Committee.

Hancock & Estabrook, LLP, Camille Hill, of Counsel, Syracuse, NY, for Debtor.

Menter, Rudin & Trivelpiece, P.C., Jeffrey A. Dove, of Counsel, Syracuse, NY, for Titan Management, LP.

Guy Van Baalen, Utica, NY, Assistant U.S. Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Before the Court is the First Interim Fee Application of Hodgson Russ LLP ("HR"), attorneys for the Official Unsecured Creditors Committee in the within Chapter 11 case ("First Interim Application"). A hearing on the First Interim Application was held on December 20, 2001. An objection to the First Interim Application was filed by Titan Management, LP ("Titan"), the Debtor's primary secured creditor. A statement of No Objection was filed by the U.S. Trustee based upon HR's voluntary reduction of its fee request.

Following oral argument on December 20th, the Court allowed the parties to file additional memoranda of law. On December 21, 2001, HR filed supplemental time records followed by a letter memorandum on January 7, 2002. On January 9, 2002, Hancock & Estabrook, LLP, Debtor's counsel, filed a memorandum of law in support of Titan's objection.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this contested matter pursuant to 11 U.S.C. §§ 1334(b) and 157(a), (b)(1) and (2)(A) and (O).

## FACTS

Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330)("Code") on August 13, 2001. On or about August 24, 2001, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("Committee") and in turn on October 18, 2001, HR was appointed retroactively to August 21, 2001 by Order of the Court to represent the Committee. Thereafter, HR embarked on its representation of the Committee. In the course of that representation, on or about October 29, 2001, HR filed an objection on the Committee's behalf, to the Debtor's continued interim use of cash collateral [1] asserting, generally, that Titan's mortgage on Debtor's hotel property was improperly recorded and, thus, was subject to being avoided.

On December 7, 2001, HR filed its First Interim Application seeking $19,432.50 in fees and $547.30 in expense reimbursement, covering the period August 22, 2001 through November 30, 2001. On December 21, 2001, following the hearing, HR submitted a letter to the Court, copied to the parties in interest, which isolated the time contained in the First Interim Application which was allegedly devoted solely to HR's efforts to challenge the validity of Titan's lien.

## ARGUMENTS

Titan has objected to HR's First Interim Application on the basis that its representation of the Committee did not benefit the Chapter 11 bankruptcy estate. Additionally, Titan contends that its mortgage lien is undersecured and there is no unencumbered property from which HR's fees and expenses can be paid. It has not consented to payment of any professional fees from its collateral other than the fees of Debtor's counsel, which have been "carved out" of proceeds of its collateral to the extent of $50,000.

Titan asserts that the "vast majority of the time devoted to this case [by HR] was spent in an unfounded, and nearly frivolous, attack on Titan's 'secured position'." *See* Titan's Objection to First Interim Fee Application, filed December 19, 2001 at ¶ 7.

HR argues that only a portion of the services for which it seeks compensation were devoted to challenging Titan's lien.[2] That in any event, HR contends in the First Interim Application that it has performed services that "were necessary for the administration of, and beneficial to, the instant case." *See* First Interim Fee Application, sworn to on December 6, 2001, at ¶ 51. HR further asserts that Titan cannot permit a "carve out" for the professional fees of Debtor's counsel, yet refuse a "carve out" for the fees of other appointed professionals in the case. If allowed to do that, Titan would be impermissably reordering the priority scheme contained in the Code.

## DISCUSSION

Before embarking upon an analysis of whether or not the services of HR conferred any benefit on the bankruptcy estate, the Court must first examine the source of payment, if any, available to fund a fee award, assuming arguendo that HR is entitled to one.[3]

---

1. Between the filing of the case and the date of HR's first objection to the validity of Titan's lien, Debtor and Titan had entered into cash collateral stipulations, subsequently approved by Order of this Court. In these stipulations, Titan had agreed to a so-called "carve out" for the payment of the fees of Debtor's counsel, but not for the payment of other professional fees.

2. In its letter to the Court, dated December 21, 2001, HR isolates 25.2 hours or $5,959.50 which it admits was devoted to the Committee's "attack" on Titan's mortgage lien.

3. At oral argument, on December 20, 2001, HR advised the Court that it did not seek payment of its fees only the fixing of the amount to be awarded. Aside from the obvi-

■ Though the Court has not had occasion to rule upon the secured position of Titan, it appears from the proceedings had in this case to date that it is very likely undersecured. As such, the payment of any professional fees now or in the future would arguably have to be paid from its collateral. However, it is well settled law in the Circuit that

> absent an agreement to the contrary, a secured creditor's collateral may only be charged for administrative expenses, including attorney's fees, to the extent these expenses directly benefitted that secured creditor.

*Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Associates, L.P.)*, 153 F.3d 61, 68 (2d Cir.1998), citing *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir.1984). The statutory basis for this position is found at Code § 506(c), which provides a vehicle whereby a trustee or debtor in possession may invade the secured creditor's collateral to recover "the reasonable, necessary costs and expenses of preserving or disposing of" that collateral. It is difficult, if not impossible, to conclude that HR's fees and expenses fit within the four corners of Code § 506(c) even assuming that it had standing to file such an application, which it does not. *See In re Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

HR relies upon the holding in *In re Ben Franklin Retail Store, Inc.*, 210 B.R. 315 (Bankr.N.D.Ill.1997) which, when considering a secured creditor's ability to voluntarily compensate debtor's counsel to the exclusion of other case professionals, concluded that the property of the estate, although encumbered, "does not belong to the secured lenders; they only have a security interest in it. (citation omitted). So we are not talking about payments from the secured lenders; we are talking about distributions from the estate." *Id.* at 319. HR asserts that permitting Debtor's counsel to be paid by means of a "carve out" from Titan's cash collateral while other Code § 507(a)(1) claimants remain uncertain of any payment reorders the Code's distribution priorities.

■ What must be remembered is that administrative expenses, such as attorney's fees, while entitled to priority pursuant to Code § 507(a)(1), are normally to be paid from a debtor's *unencumbered* assets. *See 680 Fifth Ave. Associates*, 154 B.R. at 43 (citation omitted) (emphasis added). As Judge Brozman noted, "unless the creditor is oversecured, the administrative expenses of a debtor's case are not to be charged against his collateral because a secured creditor's interest in collateral is a property right which is not impaired in bankruptcy proceedings." *Id.* (citations omitted).

The court in *Ben Franklin* expressed uncertainty regarding whether there would be any unencumbered assets available from which to pay administrative claims. *See Ben Franklin*, 210 B.R. at 316. Assuming that to be the case, it is difficult to understand the basis for the court's conclusion in *Ben Franklin* that the agreement between Debtor's counsel and the secured lender providing for compensation for completing the liquidation/reorganization of the estate "impermissibly reordered the Code's distribution priorities." That could only have occurred if it turned out that there was unencumbered collateral and the agreement between the secured creditor and Debtor's counsel re-

ous lack of judicial economy in such a process, it is uncertain in the instant Chapter 11 case whether there will ever be any signifi-

cant unencumbered assets and, thus, the significance of a "carve out" becomes the paramount issue for the Court.

sulted in the latter receiving payment from the proceeds of the liquidation *after* the creditor's claim had been fully satisfied from the proceeds of the liquidation. Certainly such a result would have impermissibly reordered the distribution priorities for the administrative claimants in the case who would have been entitled to share in any surplus on a pro rata basis.

 In the case now before this Court, Titan has consented to a carve out[4] of up to $200,000 for the fees of Debtor's counsel from encumbered funds, namely its cash collateral.[5] Those monies arguably would have been payable to Titan but for the cash collateral/carve out agreement between Titan and the Debtor. As no one apparently disputes that Titan is undersecured, administrative/priority creditors such as HR will receive no distribution unless there are unencumbered assets in the Debtor's estate.

The argument, equitable in nature, has been made that where a secured creditor has liens on substantially all of the debtor's assets and either refuses to permit a carve out altogether or where, as here, singles out one administrative claimant to the exclusion of others, it effectively controls the outcome of a large Chapter 11 case. The argument is also made that by allowing the secured creditor to pick and choose the subjects of its largess, it in effect denies certain constituencies (e.g.,

the creditors committee) effective legal representation. While this argument is tempting, it is just not supported by the law. As former Bankruptcy Judge Tina Brozman observed in *680 Fifth Ave. Associates*, commenting on the use of Code § 552(b)[6] as a basis to compel a carve out,

> The bottom line is that once we depart from using the rents to pay the ordinary operating expenses of the property, which serve to preserve the value of the creditor's collateral, unless the creditor is demonstrably oversecured, we run smack into the need for adequate protection. Whereas on a visceral level I am quite sympathetic to the pleas of the debtors and the Committee that reorganization aims ought to be paramount, I simply cannot ignore the effects of what I am being asked to approve.

*680 Fifth Ave. Associates*, 154 B.R. at 43.

This Court, too, is sympathetic to HR's request, but must reject its assertion that to permit Titan to "carve out" counsel fees exclusively for Debtor's counsel from its collateral, without making a similar provision for HR's fees, violates the priority scheme found in the Code.

Turning to the merits of the First Interim Application itself, it appears that the only remaining dispute is Titan's assertion that HR's efforts on behalf of the Committee were not reasonably necessary when

---

**4.** The term "carve out" refers to "an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid out to others, i.e., to carve out of its lien position .... Carve outs are ... common in Chapter 11 cases in favor of debtor's attorneys as part of cash collateral agreements." *In re White Glove, Inc.*, 1998 WL 731611 at *6 (Bankr.E.D.Pa. 1998), citing *Blackwood Associates*, 153 F.3d at 67.

**5.** At this stage of the case, it is, of course, uncertain whether the $200,000 carve out will result in "full compensation" to Debtor's

counsel. Indeed, Debtor's co-counsel, Hancock & Estabrook LLP, recently filed its first application for compensation seeking $54,880.50 in fees for the two month period August 13 to October 31, 2001.

**6.** Code § 552(b) has been considered by some scholars as providing a basis for justifying "carve outs" from a secured creditor's collateral under the "doctrine of necessity," the same doctrine that gives life to so-called "first day orders" and the like. *See* James S. Cole, *The Carve Out from Liens and Priorities Guarantee Payment of Professional Fees in Chapter 11*, 1993 DET. C.L. REV. 1499 (1993).

rendered, being devoted to "an unfounded and nearly frivolous attack on Titan's secured position." In a partial response, HR has filed and served on the parties in interest, a statement of hours devoted exclusively to the "attack" on Titan's secured position. *See* HR's letter, dated December 21, 2001. No one has challenged the hours isolated by HR in its December 21st letter. The balance of the services for which HR seeks compensation have drawn only limited objection from Titan's counsel.[7] The Court has reviewed the so-called non-"attack" hours and approves HR's First Interim Application in the sum of $11,669.25.

■ With regard to the hours expended by HR challenging the validity of Titan's mortgage, the Court is reminded of the teachings of former Bankruptcy Judge Francis Conrad writing in *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13 (Bankr.S.D.N.Y.1991) that

> attorneys in reorganization proceedings are agents of fiduciaries (the debtor or committees) with legal and professional obligations to the clients who retained them with prior approval of the Court. Attorneys are not independent actors. Absent concrete and unusual circumstances, *ex post facto* disallowance of compensation for activities or projects seriously threatens the attorney client relationship in general, and may well threaten the basis of the attorney client privilege.

*Id.* at 23.

Titan suggests that HR's services were rendered in support of "an ill conceived attempt to leverage a concession from the secured creditor." *See* Titan's Objection to the First Interim Fee Application at ¶ 9. This Court is not prepared to apply hindsight in order to reach that same conclusion. While the Committee's position, as

advanced by HR, may have been the proverbial "long shot," the Court does not view it as ill conceived and, accordingly, will also approve the additional fees of $5,959.50.

Based upon the foregoing it is,

ORDERED that HR's First Interim Fee Application is approved in the sum of $17,628.75 in fees and $547.36 in expenses and, it is further,

ORDERED that HR may not receive current payment of those fees and expenses pending a further order of this Court.

---

**7.** Titan asserts that HR has arguably billed its travel time at a full hourly rate, but due to a deficient method of time keeping, it can't be certain of its objection. The Court notes that HR reduced its fees by $1,803.75 voluntarily after consultation with the U.S. Trustee.